# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

Carmelo Adames, Marisol Adames-Reyes, )
Karen Agosto, Alma Aguiniga, Francisco )
Andino, Mildred Aponte-Lebron, Rosa )
Arellano, Melinda Arocho, Marta Arroyo, )
Brittnee Bannister, Tianna Barber, Tanisha )
Barber, Fatima Barkati, Andrew Borodziuk, )  Judge
Laura Boyd, Christian Bracero-Vazquez, Ma )
Brigida-Garcia, Felipe Cabral, Humberto )  Magistrate Judge
Carillo-Lopez, Brenda Carter, Dewandee )
Carter, Angel Casiano, Bernalisse Castellano, )  Case No.
Tatiana Chavez, David Cienke, Tiffany Clark, )
Schaniqua Cobbins, Shamece Cole, Gretta )
Coleman, Loretta Coleman, Belquis Colindres- )
Mejia, Addisalem Dagnew, Jameka Dean, )
Katarzyna Demczuk, Dayami Diaz, Stephanie )
Diaz-Conner, Saw-Sar Doe-Wah, Imesha Doll, )
Katrina Duckins, Tyenika Effinger, Nadia )
Estefania, Victor Estrada-Mendoza, Jessica )
Feliciano, Paul Figueroa-Ocampo, Albena )
Georgieva, Santosi Ghalley, Lucely Grueso, )
Ashley Harris, Diana Hernandez, Viviana )
Hernandez, Prince Hill, Ladana Horton, Tierra )
Hughes, Janesha Jacobs, Nazik Jebrouni, )
Angelique Jenkins, Latasha Johnson, Vera )
Johnson, Tasha Jones, Jasmine Kellar, Mbowa )
Kitenge, Czeslawa Kuziora, Yolanda Leonard, )
Lauri Lopez, Grisel Lozada, Khin Lwin, Maria )
Martinez, Priscila Martos-Barreto, Francisco )
Mata-Hernandez, Heather Mccallum, Sarath )
Meas, Elizabeth Medina, Nilton G. Medina, )
Arichely Mendez, Alexandra Mendoza, Javier )
Mendoza-Perez, Maria Michel, Mohamed )
Mohamed, Mariah Moncure, Cassandra )
Monroe, Carolina Montes, Tamatha Moore, )
Stephen Mwai, Jessica Myles, Emily Naquin, )
Hassan Nejatsabet, Omolara Odebunmi, )
Lynette Olivo, Gloria Orellana, Ieashia Parnell, )
Xiomara Pastoriza, Alisa Patinla, Irina )
Pismenny, Janet Pleasant, Araminta Ramos- )
Vega, Ana Reinoso, Rosa Reyes, Sidney Rivera, )
Cynthia Rivera, Chiketa Robertson, Tierra )
Robinson, Cecila Rodriguez, Jules Roldan, )

Jeanelle Rosa, Vanessa Ruiz, Sandra )
Sagastume, Abigail Salgado, Alizet Santiago, )
Tyisha Scurlock, Angel Segura, Lolita Smith, )
Kibitu Sori, Dimitrinka Tacheva, Dil Tamang, )
Angelica Taylor, Degitu Tessema, Luis Torres, )
Graciela Torres-Vences, Brittney Turner, )
Wirdalys Velez-Matos, Lisbeth Vera- )
Zambrano, Claudia Villa, Shaquana Vincent, )
Keosha Walker, Theresa Watson, Ashley M. )
Wells, Tahara Wells, Carolyn White, Francis )
Williams, Chamara Williams and Manual )
Williams, )
                                 )
                   Plaintiffs, )
                           -v.- )
                                   )
SCRUB, INC.; TERESA KAMINSKA; and )
MARK RATHKE, )
                                   )
                   Defendants. )

## COMPLAINT

The above-named Plaintiffs (collectively, "Plaintiffs"), for their Complaint against the above-named Defendants (collectively, "Defendants"), state as follows:

### Nature of Plaintiffs' Claims

1. This is a Rule 23 class action under the Illinois Minimum Wage Law ("IMWL") and the Illinois Wage Payment And Collection Act ("IWPCA"), as well as individual actions under the Fair Labor Standards Act ("FLSA") for each of the named Plaintiffs, who are airplane cabin cleaners. Plaintiffs' clock times as reflected on punch cards were improperly and detrimentally rounded by Defendants, and they were otherwise not properly compensated. In addition, each of the Plaintiffs and the classes were denied the full extent of their statutorily-required meal breaks, and were not paid for work performed during their unpaid meal breaks. Defendants' practices caused injury to Plaintiffs because they

deprived the cabin cleaners of their earned wages and overtime.

**Jurisdiction and Venue**

2. This Court has original federal question jurisdiction under 28 U.S.C. §1331 for the claims brought under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. This Court's supplemental jurisdiction over Plaintiffs' state law claims are required pursuant to 28 U.S.C. § 1367, because those claims are so related to claims in the action within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution

3. This Court has personal jurisdiction over the Defendants for reasons that include:

(a) Defendants conduct business and enter into contracts within the State of Illinois and in this District and with businesses located within the State of Illinois and in this District;

(b) As more specifically pled below, Defendants purposefully originated, implemented and controlled the wage and hour policies and practices that gave rise to the FLSA claims asserted herein, and Defendants purposefully directed their improper wage and hour policies and practices at residents of the State of Illinois and cabin cleaners who reside in this District, among other people;

(c) Defendants have purposefully directed the marketing of their janitorial services at residents and businesses located in the State of Illinois; and

(d) Defendants purposefully solicit Illinois businesses to enter into service agreements.

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b), inasmuch as Defendants have offices, conduct business, and can be found in the Northern District

of Illinois, and the causes of action set forth herein have arisen and occurred in part in the Northern District of Illinois.

**Parties**

*Plaintiffs*

5. Each of the Plaintiffs was employed by and have worked at various times beginning from approximately 2005 through the present as hourly paid non-exempt airplane cabin cleaners for Defendants in this District, at O'Hare International Airport, during the applicable statutes of limitations period.

6. On April 27, 2015, the court in *Solsol, et al. v. Scrub, Inc., et al,* , Case No. 13 C 7652, N.D. Ill, Gettleman, J., (herein,"*Solsol*"), conditionally certified a Rule 216(b) class consisting of individuals who have worked for Scrub as hourly non-exempt employees at O'Hare since October 24, 2010, including all of the named Plaintiffs in this case. The effect of that ruling was, among other things, to toll the limitations period for all persons who opted in to *Solsol* from October 24, 2010, including all of the named Plaintiffs in this case.

*Defendant Scrub, Inc.*

7. SCRUB, INC. is a janitorial service contractor founded in 1969. It has employed over 5,000 employees during the period for which damages are sought by this Complaint.

8. SCRUB, INC. is incorporated in Illinois and its corporate headquarters are located at 6033 Milwaukee Avenue, Chicago, IL 60646.

9. At all times between October 16, 2010 through December 1, 2012, SCRUB, INC. was engaged in the business of, amongst other things, providing janitorial cleaning services to purchasers of janitorial cleaning services at Chicago's O'Hare

International Airport, including but not limited to airlines for the cleaning of airplanes.

10. At all relevant times, SCRUB, INC. was the "employer" of each of the Plaintiffs, as the term "Employer" is defined under the FLSA, the IMWL, and the IWPCA.

11. At all relevant times, SCRUB, INC. was the "employer" of each of the members of the putative classes alleged herein, as the term "Employer" is defined under the FLSA, the IMWL, and the IWPCA.

12. At all relevant times, SCRUB, INC. directed, implemented and controlled the illegal wage and rounding policies and practices at issue in this lawsuit. Further, SCRUB, INC. both ratified and implemented the illegal wage and rounding policies and practices on Plaintiffs and the putative class members.

### Teresa Kaminska

13. TERESA KAMINSKA has admitted that she has been an owner, the vice president of operations, the president and a manager of SCRUB, INC.

14. TERESA KAMINSKA, directly and/or jointly with SCRUB, INC., and with Defendant MARK RATHKE, directed, implemented and controlled the illegal wage and rounding policies and practices at issue in this lawsuit. Further, they both ratified and implemented the illegal wage and rounding policies and practices used on Plaintiffs and the class members.

15. At all relevant times, TERESA KAMINSKA has been the "employer" of Plaintiffs and members of the putative class, as the term "Employer" is defined under the FLSA and the IMWL.

*Mark Rathke*

16.　　MARK. S. RATHKE has been the General Manager and a partial owner of SCRUB, INC.

17.　　At all relevant times, MARK S. RATHKE had the power to hire and fire all hourly employees of SCRUB, INC.

18.　　At all relevant times, Scrub, Inc.'s Vice President of Operations, who also had the authority to hire and fire all hourly employees of SCRUB, INC., reported to MARK S. RATHKE.

19.　　At all relevant times, MARK S. RATHKE has admitted that he has overseen all Human Resource functions of SCRUB, INC.

20.　　At all relevant times, MARK S. RATHKE has admitted that he has overseen all disciplinary policies and practices for hourly employees of SCRUB, INC.

21.　　At all relevant times, MARK S. RATHKE has admitted that he has overseen many financial aspects of the operations of SCRUB, INC., including establishing, implementing and enforcing the payroll practices and policies of Defendants.

22.　　At all relevant times, MARK S. RATHKE has been involved in communications with the State and Federal Departments of Labor and the Equal Employment Opportunity Commission on behalf of SCRUB, INC.

23.　　At all relevant times, MARK S. RATHKE has had control over the FLSA, IMWL and WPCA violations alleged in this Complaint.

24.　　At all relevant times, MARK S. RATHKE was the "employer" of Plaintiffs and certain members of the putative class, as the term "Employer" is defined

in the FLSA, the IMWL and the IWPCA.

25.    At all relevant times, Sarah Coady has been the sole payroll processor for SCRUB, INC. and reported directly to MARK S. RATHKE.

### *Unlawful Actions of Defendants*

26.    At all relevant times, TERESA KAMINSKA and MARK RATHKE, and/or each of them, trained all SCRUB, INC. supervisors to deduct 15 minutes from any hourly employee, including each of the named Plaintiffs herein, who arrived to work as little as 5 minutes after the start time of their scheduled shift.

27.    At all relevant times, supervisors employed by SCRUB, INC. deducted 15 minutes of pay from hourly employees that arrived as little as 5 minutes after the start time of the scheduled shift.

28.    At all relevant times, hourly employees of SCRUB, INC. could be disciplined, up to and including termination, for failing to obey the instructions from supervisors, even when those instructions resulted in a Plaintiff or putative class member not being paid for all time worked.

29.    At all relevant times, it was the payroll policy but not the practice of Defendants to pay hourly, non-exempt employees for all work performed, regardless if the work was performed within or outside the scheduled shift hours of those employees.

30.    At all relevant times, it was the payroll policy of Defendants to pay the agreed upon wage rate of each hourly, non-exempt employee for all hours worked during a week, up to forty (40) hours per week.

31.    At all relevant times, Defendants utilized a handbook titled "SCRUB,

INC. Work Policies and Policies" that Defendants referred to as Defendants' Work Rule Book, and that was authored by Defendant MARK S. RATHKE.

32.     At all relevant times, it was the written payroll policy of Defendants to pay 1.5 times the agreed upon wage rate for each hourly, non-exempt employee for all hours worked in excess of forty (40) hours per week.

33.     At all relevant times, it was the written payroll policy of Defendants to pay hourly employees for the time they spend in company transportation vans when they are being transported to and from their work areas and the punch clocks.

34.     At all relevant times, it was the written payroll policy of Defendants that Cabin Cleaners employed by Defendants must take their meal periods at the times specified by their supervisors.

35.     At all relevant times, Defendants' practice was to preclude cabin cleaners from taking a full thirty-minute meal break during their shift, even though the entire meal break was unpaid.

36.     At all relevant times, the policies and practices of Defendants defined "work" as "whatever we dictate as part of what you are required to do if you're employed by Scrub or Air Check."

37.     At all relevant times, the policies and practices of Defendants included the activity of gathering supplies and equipment within the definition of 'compensable work', regardless of whether that activity was performed within or outside of an hourly, non-exempt employee's scheduled shift time.

38.     At all relevant times, all hourly employees of Defendants were subjected to having their actual time recorded on their time cards rounded.

39.      Defendants have never interviewed, nor directed anyone to interview, individual hourly employees of SCRUB, INC. in order to determine if those employees have been performing any compensable work-related activities either before the beginning of their scheduled shifts, after the end of their scheduled shifts, or during unpaid meal breaks.

40.      Defendants have never analyzed and compared, or directed anyone to analyze and compare, the payroll records to the punch cards of hourly employees of SCRUB, INC. to determine if hourly employees were being paid for all recorded work time.

41.      Defendants have never conducted an audit of how much time hourly employees for SCRUB, INC. may have performed work during unpaid lunch breaks.

**Factual Background**

42.      All of the cabin cleaners employed by Defendants, including each of the named Plaintiffs, have used punch cards as their daily timekeeping record.

43.      Defendants have rounded the actual punch in and punch out times of cabin cleaners during all and/or part of the relevant time.

44.      While working as cabin cleaners during the relevant time, certain of the named Plaintiffs and putative class members were instructed by TERESA KAMINSKA, MARK RATHKE and/or employees of Defendants acting under their direction and control to arrive early, before their scheduled shift time, in order to collect their supplies, meet with supervisors and get to their designated areas so that they would be at their designated areas, ready to begin cleaning, at the start time of their regularly scheduled shifts.

45.      Therefore, certain of the named Plaintiffs and putative class members

would regularly arrive and punch-in for work before the start time of their scheduled shift.

46.    Certain of the named Plaintiffs and putative class members regularly performed work before punching-in, and before the start time of their scheduled shifts, including but not limited to collecting supplies, preparing equipment and meeting with supervisors.

47.    Certain of the named Plaintiffs and putative class members regularly performed work after punching-in, but before the start time of their scheduled shifts, including but not limited to collecting supplies, preparing equipment and meeting with supervisors.

48.    Virtually all of the named Plaintiffs and putative class members regularly worked through some or all of their thirty minute unpaid meal breaks.

49.    While working as janitors at O'Hare International Airport during the relevant time, Plaintiffs regularly performed work after the end time of their scheduled shifts, but before punching out, including but not limited to cleaning their equipment, replenishing supplies and returning equipment.

50.    During the FLSA statutory recovery period, SCRUB, INC. adjusted cabin cleaners' actual punch times to conform with even hours and/or scheduled shift times, which typically resulted in the Plaintiffs and certain putative class members being paid 40 hours per workweek, or 8 hours per shift.

51.    The punch cards of Plaintiffs were rounded from the actual punched in time to a rounded time in, to their detriment.

52.    The punch cards of Plaintiffs were rounded from an actual punched out

time to a rounded time out, to their detriment.

53.     At the end of a pay period, Defendant TERESA KAMINSKA, MARK RATHKE and/or employees of Defendants acting under their direction and control, would round away any minutes recorded on Plaintiffs' punch cards that were logged prior to the start time, and, at times, after the end time of their regularly scheduled shifts. The rounded times, not the actual times, were then used to calculate and process payroll for Plaintiffs.

54.     During the relevant time, certain of the named Plaintiffs and putative class members were regularly not paid for the additional overtime work performed prior to the start time of their scheduled shifts.

55.     During the relevant time, certain of the named Plaintiffs and putative class members were not regularly paid for the additional overtime work performed after the end time of their scheduled shifts, or after they had punched out.

56.     During the relevant time, certain of the named Plaintiffs and putative class members were not regularly paid for the additional overtime work performed during their unpaid meal breaks.

57.     During the relevant time, Defendants failed to record the exact times of any break periods, including meal break periods, provided to Plaintiffs and to the putative class members.

58.     Defendants' practice of rounding cabin cleaners' punch cards and failing to pay for all time worked is wide-spread and has occurred for a significant period of time.

59.     The identity of the cabin cleaners who were not paid the actual time

reflected on their punch cards can be determined by comparing the punch cards themselves to their supervisor's summary records and their own payroll records, all of which are required to be kept by Defendants pursuant to 29 C.F.R. § 516 of the FLSA, and under relevant Illinois law.

60.     The setting of wage and hour policies and practices for Defendants' cabin cleaners is directly established by TERESA KAMINSKA and MARK RATHKE and implemented upon the cabin cleaners working for SCRUB, INC.

61.      At all times relevant herein, TERESA KAMINSKA and MARK RATHKE, directly and/or jointly with SCRUB, INC., originated, controlled and implemented the policy, practice and procedure of docking cabin cleaners for 15 minutes of time actually worked if they punched in for work 5 minutes late.

62.     At all times relevant herein, TERESA KAMINSKA and MARK RATHKE, directly and/or jointly with SCRUB, INC. established a policy that forbids the payment of overtime to cabin cleaners unless it is pre- approved, even though cabin cleaners routinely work greater than forty hours per work week, with Defendants' knowledge and at Defendants' direction.

63.     As a result of Defendants' wage and hour and rounding practices as alleged herein, the Defendants benefited from reduced labor and payroll costs which, in turn, increased the earnings of SCRUB, INC., TERESA KAMINSKA and MARK RATHKE.

**COUNT I**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT – OVERTIME WAGES**

64.     Each of Plaintiffs re-allege Paragraphs 1 through 63 as and for Paragraphs 1 through 63 of this Count I.

65.     Each of Plaintiffs bring this count pursuant to 29 U.S.C. §216(b) to recover unpaid overtime wages, liquidated damages, attorneys' fees and costs, and other damages owed.

66.     Each of Plaintiffs are hourly-paid, non-exempt, full-time cabin cleaners whom Defendants employed during the relevant time period and whose daily punch in and punch out time was rounded and/or unpaid as described above.

67.     Defendants operated under a scheme and practice, as described above, to deprive each of Plaintiffs of overtime compensation and thereby increase their earnings and, ultimately SCRUB, INC.'s profits.

68.     Section 207(a)(1) of the FLSA requires that an employee must be paid overtime, equal to at least one and one half times the employee's regular rate of pay, for all hours worked in excess of 40 hours per week.

69.     Each of Plaintiffs were not paid for all hours worked in excess of 40 in a week in violation of the maximum hours provisions of the FLSA, to wit, 29 U.S.C. 207(a).

70.     While punched in, each of Plaintiffs were subject to the control of Defendants and engaged in activities that were not undertaken for their own convenience, but were necessary for the performance of their duties for Defendants and integral and indispensable to their principal activities. Despite this, Plaintiffs regularly were required to work "off the clock" as set forth herein that entitled them to compensation therefore:

• During meal periods, which were not time for which any of Plaintiffs were paid, Defendants required and/or permitted Plaintiffs to remain on duty on the premises or at

a prescribed work site in the interest of the employer.

• Defendants required and/or permitted Plaintiffs and the putative class members to routinely work through some or all of their meal periods, without pay.

• Defendants required and/or permitted certain of Plaintiffs to work either on or off the clock, prior to the beginning of their scheduled shift, and without pay for such time worked prior to the beginning of their scheduled shift.

• Defendants required and/or permitted certain of Plaintiffs to remain on duty on the premises or at a prescribed work site, after they were punched out and off the clock, in the interest of the employer.

71.     Defendants' rounding practices violated the overtime provisions of the FLSA because Defendants did not pay the overtime wages for all work performed by Plaintiffs.

72.     Defendants' rounding practices as set forth herein violate the record-keeping requirements set forth in Section 29 U.S.C. § 211(c), and in 29 C.F.R. § 516.2(7)-(9).

73.     The action of Defendants to not pay overtime or premium pay for all hours worked over 40 in a week and their failure to keep accurate payroll records was willful in that Defendants knew that the FLSA required them to pay time and one-half for all hours worked over 40 in a workweek and Defendants knew that the FLSA required them to maintain true and accurate records.

74.     As a direct and proximate result thereof, each of the Plaintiffs are due unpaid overtime and liquidated damages, pursuant to 29 U.S.C. § 216.

WHEREFORE, each of the Plaintiffs pray for judgment against Defendants,

jointly and severally, as follows:

A.  Declare and find that Defendants committed one or more of the following acts:

i.  Violated overtime provisions of the FLSA by failing to pay overtime wages to Plaintiffs; and

ii.  Willfully violated the overtime provisions of the FLSA; and

iii.  Willfully violated the recordkeeping provisions of the FLSA;

B.  Award compensatory damages, including all pay owed, in an amount according to proof;

C.  Award liquidated damages on all compensation due accruing from the date such amounts were due;

D.  Award all costs and reasonable attorneys' fees incurred in prosecuting this claim; and

E.  For such further relief as the Court deems just and equitable.

## COUNT II
## VIOLATION OF THE ILLINOIS MINIMUM WAGE LAW

**(Brought as a Class Action by each of Plaintiffs, Individually and on Behalf of All Others Similarly Situated)**

75.  Plaintiffs reallege paragraphs 1-63.

76.  This Count arises from Defendants' willful violation of the IMWL by deducting the unpaid meal breaks from Plaintiffs' pay when said breaks were not *bona fide* because the class members were either on call or engaged to wait, for the predominant benefit of the employer during such time, which constituted compensable work time and which therefore should have been paid. Plaintiffs and the class are current and former employees of Defendants who are due, and who have not

been paid, minimum wages and overtime wages for all time worked by them.

77.     Section 105/4(a) of the IMWL requires employers to pay employees one and one half times their regular rate for all hours worked over 40 per work week. Section 105/12 provides that employers who violate the provisions of this act are liable to affected employees for unpaid wages, costs, attorney's fees, damages of 2% of the amount of any such underpayment for each month following the date of underpayments and for other appropriate relief.

78.     Defendants violated the IMWL by regularly and repeatedly failing to properly compensate Plaintiffs and similarly-situated employees for the straight time and overtime they worked each week.

79.     The proposed classes of similarly situated persons are defined as follows:

(a)  Class A is represented by Named Plaintiffs Jules Roldan, and Marta Arroyo, individually and on behalf of all employees who were or are currently employed by Defendants, their subsidiaries, affiliates, predecessors and/or successors, as airplane cabin cleaners or other similarly titled positions in the State of Illinois at any time during the relevant statute of limitations whose job duties included responding to and cleaning arriving flights during their scheduled shift hours; and

(b) Class B is represented by Named Plaintiffs Cynthia Rivera and Tatiana Chavez, individually and on behalf of all employees who were or are currently employed by  Defendants, their subsidiaries, affiliates, predecessors and/or successors, as airplane cabin cleaners or other similarly titled positions in the State of Illinois at any time during the relevant statute of limitations whose job duties never included responding to and cleaning arriving flights during their scheduled shift hours.

80.     Defendants' failure to compensate Plaintiffs and the putative classes for the full amount for all time worked violates the IMWL.

81.     Count II is brought pursuant to Fed. R. Civ. P. 23(a) and 23(b) because the class of plaintiffs is so numerous that joinder of all class members is impracticable.  The number of cabin cleaners employed by Defendants during the relevant time period is in the thousands.

82.     The named plaintiffs as class representatives and the putative class members have been equally affected by Defendants' failure to pay wages earned.

83.     Furthermore, those putative class members still employed by Defendants may be reluctant to raise individual claims for fear of retaliation.

84.     The issues involved in this lawsuit present common questions of law and fact, specifically:

   i.   Whether the putative class members performed work during at least some of their unpaid meal breaks; and

   ii.   Whether the putative class members were provided with bona fide meal breaks.

85.     These common questions of law and fact predominate over the variations which may  exist between members of the class, if any.

86.     The named plaintiffs, the class members, and Defendants have a commonality of interest in the subject matter and remedy sought.

87.     The class representatives are able to fairly and adequately represent and protect the interests of the class. If individual actions were required to be brought by each member of the class injured or affected, the result would be a multiplicity of actions, creating a hardship to class members, to the Court, and to the Defendants.

88.     Accordingly, a class action is an appropriate method for the fair and

efficient adjudication of this lawsuit and distribution of the common fund to which

the class is entitled.

WHEREFORE, Plaintiffs pray that this Court award the following relief under Count

II:

A.     Certify a class of individuals who were employed by Defendants as hourly-paid non-exempt cabin cleaners in the State of Illinois at any time during the relevant statute of limitations period and appoint Plaintiffs' counsel as counsel for the class;

B.     Declare and find that Defendants committed one or more of the following acts:

   i.  Violated provisions of the Illinois Minimum Wage Law, 820 ILCS §105 *et seq*., by failing to pay minimum wages to Plaintiffs;

   ii.  Violated overtime provisions of the Illinois Minimum Wage Law, 820 ILCS §105 *et seq*., by failing to pay overtime wages to Plaintiffs; and

   iii.  Willfully violated minimum wage and overtime provisions of the Illinois Minimum Wage Law, 820 ILCS §105 *et seq*.

C.     Award compensatory damages, including all regular and overtime pay owed, in  an amount according to proof;

D.     Award interest on all regular and overtime  compensation  due accruing  from the date such amounts were due;

E.      Award all costs and reasonable attorney's fees incurred prosecuting this claim;  and

F.      For such further relief as the Court deems just and equitable.

## COUNT III
## VIOLATION OF THE ILLINOIS
## WAGE PAYMENT AND COLLECTION ACT

**(Brought as a Class Action by each of Plaintiffs, Individually and on Behalf of All Others Similarly Situated)**

89.     Plaintiffs reallege paragraphs 1-63.

90.     This Count arises from Defendants' willful violation of the WPCA by deducting the unpaid meal breaks from Plaintiffs' pay when said breaks were not *bona fide* because the class members were either on call or engaged to wait, for the predominant benefit of the employer during such time, which constituted compensable work time that Defendants had agreed to pay and which therefore should have been paid. Plaintiffs and the class are current and former employees of Defendants whom Defendants agreed to pay, and are due, but who have not been paid their wages earned for all time worked by them.

91.     During the course of their employment with Defendants, Plaintiffs each had an agreement within the meaning of the IWPCA to be compensated for all time worked at the rate agreed to by the parties.

92.     In one or more individual work weeks, Defendants did not pay Plaintiffs for all hours worked at the rates agreed to by the parties.

93.     Plaintiffs were each entitled to be compensated for all time worked as agreed between Plaintiffs and Defendants.

94.      Plaintiffs are each entitled to recover owed wages for as far as ten (10) years prior to the filing of this lawsuit.

95.      The proposed class of similarly situated persons is represented by and

is defined as follows:

(a) Class A is represented by Named Plaintiffs Jules Roldan, and Marta Arroyo, individually and on behalf of all employees who were or are currently employed by Defendants, their subsidiaries, affiliates, predecessors and/or successors, as airplane cabin cleaners or other similarly titled positions in the State of Illinois at any time during the relevant statute of limitations whose job duties included responding to and cleaning arriving flights during their scheduled shift hours; and

(b) Class B is represented by Named Plaintiffs Cynthia Rivera and Tatiana Chavez, individually and on behalf of all employees who were or are currently employed by Defendants, their subsidiaries, affiliates, predecessors and/or successors, as airplane cabin cleaners or other similarly titled positions in the State of Illinois at any time during the relevant statute of limitations whose job duties never included responding to and cleaning arriving flights during their scheduled shift hours.

96.     Defendants' failure to compensate Plaintiffs and the putative class for the full amount of all time agreed to be paid violates the IWPCA.

97.     Count III is brought pursuant to Fed. R. Civ. P. 23(a) and 23(b) because the class of plaintiffs is so numerous that joinder of all class members is impracticable.  The number of cabin cleaners employed by Defendants during the relevant time period is in the thousands.

98.     The named plaintiffs as class representatives and the putative class members have been equally affected by Defendants' failure to pay wages that were agreed to be paid.

99.     Furthermore, those putative class members still employed by Defendants may be  reluctant to raise individual claims for fear of retaliation.

100.     The issues involved in this lawsuit present common questions of law

and fact, specifically:

(a) Whether Defendants agreed to pay cabin cleaners at an agreed upon rate; and

(b) Whether the putative class members were unpaid for work they performed but for which Defendants agreed to pay them; and

(c) Whether the putative class members performed work during at least some of their unpaid meal breaks.

101. These common questions of law and fact predominate over the variations which may exist between members of the class, if any.

102. The named plaintiffs, the class members, and Defendants have a commonality of interest in the subject matter and remedy sought.

103. The class representatives are able to fairly and adequately represent and protect the interests of the class. If individual actions were required to be brought by each member of the class injured or affected, the result would be a multiplicity of actions, creating a hardship to class members, to the Court, and to the Defendants.

104. Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the class is entitled.

WHEREFORE, Plaintiffs pray that this Court award the following relief under Count III:

(a) Certify the classes as defined above in paragraph 95 and appoint Plaintiffs' counsel as counsel for the class;

(b) Declare and find that Defendants committed one or more of the following acts:

• Violated overtime provisions of the Illinois Wage Payment and Collection Act, by failing to pay agreed upon wages to Plaintiffs; and

• Willfully violated the provisions of the Illinois Wage Payment and Collection Act.

(c) Award compensatory damages, including all regular and overtime pay owed, in an amount according to proof;

(d) Award interest on all regular and overtime compensation due accruing from the date such amounts were due;

(e) Award all costs and reasonable attorney's fees incurred prosecuting this claim; and

(f) For such further relief as the Court deems just and equitable.

JURY DEMANDED ON ALL COUNTS

Date: July 11, 2017

**Respectfully Submitted,**
**Attorney for Plaintiffs and the**
**putative classes**

By: /s/ Glen J. Dunn
      Glen J. Dunn
      One of Plaintiffs' attorneys

Jeffrey Grant Brown            Glen J. Dunn, Jr.
Jeffrey Grant Brown, P.C.      Glen J. Dunn & Associates, Ltd.
221 North LaSalle Street, Suite 1414  221 North LaSalle Street, Suite 1414
Chicago, IL 60601             Chicago, IL 60601
312.789.9700                312.546.5056